MAR 10 2020 PM5:17
FILED-USDC-CT-NEW HAVEN

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Grand Jury N-19-2

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:20cr47(JCH)(SALM) |
| v. | VIOLATIONS: |
| NORMAN NEWMAN | 18 U.S.C. § 1349<br>(Conspiracy to Commit Mail and Wire Fraud)<br>18 U.S.C. § 1343<br>(Wire Fraud) |

INDICTMENT

The Grand Jury charges:

1. At all times relevant herein, Norman Newman ("NEWMAN"), together with others known and unknown to the Grand Jury, knowingly supplied lists of potential victims for use in fraudulent mass-mailing schemes. These potential victim lists were essential to fraudulent mass mailers, who could not perpetrate their schemes without such lists.

Defendant

2. NEWMAN was Senior Vice President of Sales for a company ("the Company") that offered list brokerage services to clients engaged in mass-mailing fraud. NEWMAN and his co-conspirators assisted clients by obtaining lists of potential victims for his clients to buy, and by helping clients sell their lists of victims to other mailers. The Company's offices were located in New York from at least as early as February 2005 until 2011 and in Connecticut from 2011 through at least as late as September 2016.

COUNT ONE
(Conspiracy to Commit Mail and Wire Fraud)

3. Paragraphs 1 and 2 of this Indictment are incorporated by reference.

4. From in or about February 2005 through in or about September 2016, the exact dates being unknown to the Grand Jury, in the District of Connecticut and elsewhere, NEWMAN and his co-conspirators did unlawfully, knowingly, and willfully combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to commit mail fraud, in violation of Title 18, United States Code, Section 1341; and wire fraud, in violation of Title 18, United States Code, Section 1343.

## The Object of the Conspiracy

5. The object of the conspiracy was for NEWMAN and his co-conspirators to enrich themselves by helping fraudulent mass mailers acquire lists of potential victims to defraud and by helping mass mailers sell lists of potential victims to be defrauded by others.

## The Manner and Means of the Conspiracy

6. NEWMAN and his co-conspirators acted as list brokers for fraudulent mass mailers. The mass mailers sent out fraudulent letters that appeared to be personalized to each recipient when, in actuality, the same letters were sent to thousands of consumers on the mailing lists that NEWMAN provided. Each letter was intended to mislead the consumer into believing they would receive a large amount of money, a valuable prize, or personalized psychic services upon payment of a fee to the mass mailers, who operated under false names. NEWMAN and his co-conspirators were paid a commission for brokering the sale of lists of potential victims to fraudulent mass mailers. NEWMAN and his co-conspirators obtained mailing lists for fraudulent mass-mailer clients, knowing those clients intended to defraud the consumers on those lists. NEWMAN and his co-conspirators also assisted fraudulent mass-mailer clients in earning income from lists of victims the clients had already defrauded by selling those lists to other fraudulent mass mailers.

7. NEWMAN and his co-conspirators knew the content and fraudulent character of their clients' letters because they routinely requested and received sample copies of them during list transactions. NEWMAN and his co-conspirators then kept those sample copies of fraudulent

letters for reference at the Company in both digital and paper form. In general, the most effective mailing lists for any particular fraudulent mass mailing were lists made up of victims of other mass-mailing campaigns that used similarly deceptive letters. NEWMAN and his co-conspirators accordingly used the sample copies of client letters they received and maintained to make recommendations of particular mailing lists to fraudulent mass-mailer clients.

8.  NEWMAN and his co-conspirators received warnings that clients' letters were fraudulent, and that victims of their fraudulent mass-mailing clients were vulnerable. For example, in or about February 2012, a list owner wrote to NEWMAN: "Just yesterday a guy wrote to me about his [A]lzheimer wife believing she won. . . . . for all offers, including this one, where it really appears that the person is getting a check sent to them for lots of money and seemingly no qualifiers, I must say no."

9.  NEWMAN and his co-conspirators also knew that certain of their clients were under scrutiny by law enforcement. For example, in or about December 2009, NEWMAN circulated within the Company a news article about a client of the Company who had been arrested for sending letters to victims that requested a "processing fee" to claim a "sweepstakes prize." In or about December 2014, NEWMAN discussed with a client that another major mass-mailer client who had regularly ordered mailing lists from the Company had been "stopped by the authorities." Similarly, in or about June 2015, NEWMAN knew that the Company was warned by the Iowa Attorney General's Office that the Company's clients were deceiving elderly Iowans. After receiving these and other warnings, NEWMAN and his co-conspirators continued to provide mailing lists of victims to mass mailers they knew were engaged in fraud.

10. NEWMAN also helped fraudulent clients to manage disruption to their business caused by law enforcement action. For example, in or about December 2014, NEWMAN offered his services to a fraudulent mass mailer whose prior list broker shut down to avoid federal law enforcement. Similarly, in or about June 2016, NEWMAN sent a client a link to a newspaper article with the headline "Feds: Mail fraud schemes scam seniors," together with materials

connecting the client's own letters to the subject of the newspaper article. Two months later, in or about August 2016, NEWMAN advised the client on how to restructure the client's company to make it easier to change names frequently and thereby evade law enforcement scrutiny.

11. During the course of the conspiracy, NEWMAN knowingly furnished millions of potential victims to clients engaged in fraudulent mass-mailing campaigns.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH SIXTEEN
(Wire Fraud)

12. Paragraphs 1-11 of this Indictment are incorporated by reference.

13. Beginning in or around February 2005 and continuing through on or about September 22, 2016, in the District of Connecticut and elsewhere, NEWMAN, together with others known and unknown to the Grand Jury, knowingly and with the intent to defraud, devised a scheme and artifice to defraud consumers in order to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, to wit, by brokering the exchange of mailing lists between clients who defrauded consumers using fraudulent letters, as described above.

### The Executions of the Scheme and Artifice

14. On or about the dates listed below, in the District of Connecticut and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud, NEWMAN, together with others known and unknown to the Grand Jury, knowingly caused to be transmitted in interstate commerce by means of wire communications certain writings and sounds, each constituting a separate count of this Indictment, as follows:

| COUNT | APPROXIMATE DATE | DESCRIPTION OF WIRES |
| --- | --- | --- |
| 2. | 1/29/15 | Interstate email from NEWMAN in Connecticut |
| 3. | 7/23/15 | Interstate email from NEWMAN in Connecticut |
| 4. | 7/27/15 | Interstate email from NEWMAN in Connecticut |

| COUNT | APPROXIMATE DATE | DESCRIPTION OF WIRES |
|---|---|---|
| 5. | 8/18/15 | Interstate email from NEWMAN in Connecticut |
| 6. | 9/10/15 | Interstate email from NEWMAN in Connecticut |
| 7. | 9/24/15 | Interstate email from NEWMAN in Connecticut |
| 8. | 9/30/15 | Interstate email from the Company in Connecticut caused by NEWMAN |
| 9. | 1/20/16 | Interstate email from NEWMAN in Connecticut |
| 10. | 1/26/16 | Interstate email from the Company in Connecticut caused by NEWMAN |
| 11. | 2/19/16 | Interstate email from NEWMAN in Connecticut |
| 12. | 3/15/16 | Interstate email from the Company in Connecticut caused by NEWMAN |
| 13. | 6/3/16 | Interstate email from NEWMAN in Connecticut |
| 14. | 6/8/16 | Interstate email from NEWMAN in Connecticut |
| 15. | 6/24/16 | Interstate email from NEWMAN in Connecticut |
| 16. | 8/5/16 | Interstate email from NEWMAN in Connecticut |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

15. Upon conviction of one or more of the conspiracy to commit mail and wire fraud or wire fraud offenses alleged in Count(s) 1-16 of this Indictment, NEWMAN shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 1343 and 1349, and a sum of money equal to the total amount of proceeds obtained as a result of the offenses.

16. If any of the above described forfeitable property, as a result of any act or omission of NEWMAN, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be

divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of NEWMAN up to the value of the forfeitable property described above.

All in accordance with Title 18, United States Code, Section 981(a)(1), as incorporated by Title 28, United States Code, Section 2461(c), Title 21, United States Code, Section 853, and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

_____
FOREPERSON

THE UNITED STATES OF AMERICA

_____
LEONARD C. BOYLE
FIRST ASSISTANT U.S. ATTORNEY
DISTRICT OF CONNECTICUT

_____
GUSTAV W. EYLER
DIRECTOR
CONSUMER PROTECTION BRANCH
U.S. DEPARTMENT OF JUSTICE

_____
HEATHER L. CHERRY
ASSISTANT U.S. ATTORNEY

_____
ALISTAIR READER
EHREN REYNOLDS
TRIAL ATTORNEYS

7

All in accordance with Title 18, United States Code, Section 981(a)(1), as incorporated by Title 28, United States Code, Section 2461(c), Title 21, United States Code, Section 853, and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

/s/
_____
FOREPERSON

THE UNITED STATES OF AMERICA

*[signature]*
LEONARD C. BOYLE
FIRST ASSISTANT U.S. ATTORNEY
DISTRICT OF CONNECTICUT

GUSTAV W. EYLER
DIRECTOR
CONSUMER PROTECTION BRANCH
U.S. DEPARTMENT OF JUSTICE

*[signature]*
HEATHER L. CHERRY
ASSISTANT U.S. ATTORNEY

ALISTAIR READER
EHREN REYNOLDS
TRIAL ATTORNEYS

7