UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT


– – – – – – – – – – – – – – – x

UNITED STATES OF AMERICA          3:20CR47(AWT)

          vs.

NORMAN NEWMAN
                              HARTFORD, CONNECTICUT
                   Defendant     APRIL 23, 2021

– – – – – – – – – – – – – – – x


**CHANGE OF PLEA HEARING**


        BEFORE:

            HON. ALVIN W. THOMPSON, Senior U.S.D.J.


APPEARANCES:


        FOR THE GOVERNMENT:

            OFFICE OF THE UNITED STATES ATTORNEY
            157 Church Street, 23rd Floor
            New Haven, Connecticut 06510
            BY:  HEATHER CHERRY, AUSA

        FOR THE DEFENDANT:

            WHITE & CASE – NY
            1221 Avenue of the Americas
            New York, New York  10020
            BY:  DOUGLAS JENSEN, ESQ.


                              Corinna F. Thompson, RPR
                              Official Court Reporter

1                        **12:59 PM**

2              THE COURT:  Good afternoon.  Please be seated

3    everyone.

4              MR. JENSEN:  Thank you, Your Honor.

5              THE COURT:  We're here in the matter of United

6    States of America versus Norman Newman.  The docket number

7    is 3:20CR47.

8              Would counsel please state their appearances for

9    the record and identify anyone who's here with you.

10             MS. CHERRY:  Your Honor, for the government I am

11   AUSA Heather Cherry.  Good afternoon.

12             MR. JENSEN:  Good afternoon, Your Honor.  Doug

13   Jensen for the defendant, Mr. Newman.

14             THE COURT:  And Mr. Newman is seated in the jury

15   box.

16             MR. JENSEN:  Correct.

17             THE COURT:  Thank you.

18             And Ms. Cherry, I understand that the purpose of

19   today's proceeding is to accept a change of plea; is that

20   correct?

21             MS. CHERRY:  That is correct, Your Honor.

22             THE COURT:  Could you just put on the record

23   what's been done in terms of victim notification?

24             MS. CHERRY:  Yes.  We have created a website,

25   because there are hundreds of thousands of victims out

1       there potentially related to this fraud, people who

2       received these mass mailings.  We've created a website,

3       and on that website we updated it to notify victims that

4       there was this proceeding today.

5                   THE COURT:  Thank you.

6                   MS. CHERRY:  Thank you.

7                   Your Honor, before we proceed, I see that

8       Mr. Newman is here, but it's not clear to me if the

9       courtroom is open or the courtroom is closed.

10                  THE COURT:  It's open.

11                  MS. CHERRY:  Thank you.

12                  THE COURT:  As is the Zoom link.

13                  MS. CHERRY:  Yes, I understand that.  Thank you.

14      I just wasn't sure if we needed to put CARES findings, but

15      if the courtroom is open I don't think that that's

16      necessary.  Thank you.

17                  THE COURT:  I agree.  Thank you.

18                  Mr. Newman, I believe you've been advised of

19      your rights in the past, but I am going to review them

20      again because I want to be certain that you understand

21      them.  Please listen carefully as I do so.

22                  You have a right to remain silent, that is, you

23      are not required to make any statement.  If you do make a

24      statement that statement can and probably will be used

25      against you.

1           Do you understand that, sir?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Now, if at any time you have already

4   made a statement you need not continue, that is, if you

5   start to make a statement you may stop at any time.

6           Do you understand that, sir?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  You have a right to counsel, that

9   is, you have a right to be represented by an attorney at

10   every stage of the proceedings against you.  You are

11   currently represented by Attorney Jensen, but if at some

12   point in the future you are not, and you cannot afford

13   counsel, one will be appointed for you by the Court at no

14   cost to you.

15           Do you understand that, sir?

16           THE DEFENDANT:  Yes, I do.

17           THE COURT:  Thank you.

18           Ms. Cherry, what is the nature of the charge

19   against Mr. Newman and the maximum sentence to which he

20   could be exposed if convicted.

21           MS. CHERRY:  He is pleading guilty to.

22   18 U.S.C. 1349, conspiracy to commit mail and wire fraud.

23   The maximum term of imprisonment is 20 years, supervised

24   release is a term of not more than three years, a fine of

25   $250,000, and a special assessment of $100, and there's

1    also mandatory restitution.

2              THE COURT:  Thank you.

3              MS. CHERRY:  And Your Honor, I apologize.  We

4    are going to also -- because I didn't mention it at the

5    beginning, Mr. Newman and the government are entering into

6    a cooperation agreement as well.

7              THE COURT:  Yes.  And I'm going to cover that in

8    a few minutes.

9              MS. CHERRY:  Thank you.

10              THE COURT:  I'm just going to ask that anybody

11    else who's on Zoom mute themselves.  I'm not sure if we're

12    getting a little feedback from Mr. Perez.

13              Okay.

14              Mr. Newman, before accepting a guilty plea from

15    you there are a number of questions that I must ask you

16    while you are under oath to assure that it is a valid

17    plea.  I may at times cover a point more than once, but if

18    I do that will be because it is very important that you

19    understand everything that is happening here today.  And

20    if you do not understand any of my questions, please do

21    not hesitate to say so and I will restate the question or

22    ask that you speak with your attorney.

23              Do you understand that, sir?

24              THE DEFENDANT:  Yes, I do.

25              THE COURT:  And Mr. Jensen, if at any time you

1    and Mr. Newman would like to have a private conversation,

2    you all can just step through this door or out into

3    hallway and do that.

4              MR. JENSEN:  Thank you, Judge.

5              THE COURT:  It's hard to do it with this setup

6    here because you're not sitting next to each other.

7              MR. JENSEN:  Thank you, Judge.

8              THE COURT:  Madam Clerk, would you please put

9    the defendant under oath.

10             THE CLERK:  Would you please raise your right

11   hand, sir.

12             You do solemnly swear that any response you make

13   to the Court's inquiry of you shall be the truth, the

14   whole truth and nothing but the truth, so help you God or

15   you do so affirm?

16             THE DEFENDANT:  I do.

17             THE CLERK:  Thank you.

18             THE COURT:  Something just happened to my Zoom

19   connection, but it looks as though the court reporter can

20   see me and hear me.

21             THE COURT REPORTER:  Yes, Your Honor.

22             THE COURT:  That's all that matters.

23             Mr. Newman, do you understand that now that

24   you've taken this oath your answers to my questions will

25   be subject to the penalties for perjury or for making a

1    false statement if you do not answer truthfully?

2              THE DEFENDANT:  Yes, I understand.

3              THE COURT:  Would you please state your full

4    name, sir.

5              THE DEFENDANT:  Norman Newman.

6              THE COURT:  Have you ever used any other names?

7              THE DEFENDANT:  No.

8              THE COURT:  Can you tell me how old you are,

9    sir?

10             THE DEFENDANT:  74.

11             THE COURT:  And can you tell me how much

12   education you have?

13             THE DEFENDANT:  College graduation.

14             THE COURT:  Mr. Newman, are you presently or

15   have you been recently under the care of a physician or

16   psychiatrist?

17             THE DEFENDANT:  A physician.

18             THE COURT:  In the past 48 hours have you taken

19   any narcotic drugs, medicine or pills, or consumed any

20   alcoholic beverages?

21             THE DEFENDANT:  No.  Only my regular

22   prescription drugs.

23             THE COURT:  Does any of that medication make you

24   drowsy, sir?

25             THE DEFENDANT:  No.

1          THE COURT:  Or cause you to have trouble

2     concentrating or focusing?

3          THE DEFENDANT:  No.

4          THE COURT:  Sir, have you ever been hospitalized

5     or treated for alcoholism or narcotics addiction?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  Is it your mind clear today, sir?

8          THE DEFENDANT:  Yes, it is, Your Honor.

9          THE COURT:  And do you understand everything

10     that is going on here?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Mr. Jensen, have you had any

13     difficulty in communicating with your client?

14          MR. JENSEN:  I have not.

15          THE COURT:  And have you discussed with this

16     case with him?

17          MR. JENSEN:  Yes.

18          THE COURT:  And do you believe he understands

19     the rights he will be waiving by pleading guilty?

20          MR. JENSEN:  Yes.

21          THE COURT:  Do you believe he is capable of

22     understanding the nature of these proceedings?

23          MR. JENSEN:  Yes.

24          THE COURT:  Do you have any doubt as to the

25     defendant's competence to plead at this time?

1          MR. JENSEN:  No doubt, Your Honor.

2          THE COURT:  And have you advised your client of

3    the maximum sentence and fine that can be imposed, and

4    have you discussed with him the operation of the

5    Sentencing Guidelines and the role they play in the

6    sentencing process?

7          MR. JENSEN:  Yes, Your Honor.

8          THE COURT:  Thank you.

9          Let me just make sure that I still have people

10   here.  Okay.

11         Mr. Newman, have you had an opportunity to

12   discuss your case with your attorney and are you satisfied

13   to have him represent you?

14         THE DEFENDANT:  Yes, I am.

15         THE COURT:  And have you received and read a

16   copy of the indictment in this case?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Have you consulted with your

19   attorney about the charges in the indictment, sir?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Do you understand the charges?

22         THE DEFENDANT:  Yes.

23         THE COURT:  At this time I want to talk about

24   one of the two letter agreements that we're going to talk

25   about today.

1               There is a letter that talks about you

2      cooperating with the government.  Have you read that

3      letter, sir.

4               THE DEFENDANT:  Yes, I did.

5               THE COURT:  Have you discussed it with your

6      attorney?

7               THE DEFENDANT:  Yes.

8               THE COURT:  And do you understand that letter,

9      sir?  Do you have any --

10              THE DEFENDANT:  I do.

11              THE COURT:  Okay.  I have a set of questions I

12     usually ask people when they are entering into an

13     agreement of this type so I'm just going to review those

14     with you and then I'm going to ask Ms. Cherry to outline

15     the terms of the cooperation agreement, okay?

16              I like to emphasize to people that the agreement

17     states that a defendant will fully disclose truthfully all

18     information, and I like to emphasize that means

19     100 percent, not 90 percent, not 99 percent.

20              Do you understand that, sir?

21              THE DEFENDANT:  I understand.

22              THE COURT:  And also the agreement states that

23     the government has the option of making a motion on your

24     behalf for substantial assistance.  Do you understand that

25     the decision as to whether or not to make that motion is

1    the government's decision?

2           THE DEFENDANT:  I understand.

3           THE COURT:  So you, Mr. Jensen and I may all

4    agree that the government should make the motion, but if

5    the government doesn't think so, I can't force the

6    government to make the motion.

7           Do you understand that, sir?

8           THE DEFENDANT:  Yes, I do.

9           THE COURT:  And similarly, the government may

10   make the motion.  You, Mr. Jensen and the government may

11   all agree that the sentencing judge should act favorably

12   on it, but it's entirely the judge's discretion as to how

13   to act on the motion.

14          Do you understand that?

15          THE DEFENDANT:  I understand.

16          THE COURT:  There's a section in here that says

17   that if you breach the agreement certain things might

18   happen.  I always like to make sure that I have the same

19   understanding as the defendant as to what it means to

20   breach an agreement.

21          What's your understanding of what it means to

22   breach an agreement, sir?

23          THE DEFENDANT:  If I tell an untruth, or if I

24   have some criminal history, or if I do anything in a

25   criminal nature, that would breach the agreement.

1          THE COURT:  And anything that's in violation of

2     the agreement, not just criminal.

3          Do you understand that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And do you understand, sir, that if

6     you breach the agreement you could be worse off than if

7     you'd never agreed to cooperate in the first place?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Okay.  And then the other thing I

10    like to make sure people understand is that at the end of

11    this agreement it says that there are no promises,

12    agreements or conditions other than those that are written

13    down and put in this agreement.  So if you had a

14    conversation with somebody and you think that you've

15    reached some modification to the agreement, it doesn't

16    count unless it's put in writing and signed by everybody

17    who signed this agreement.

18         Do you understand that, sir?

19         THE DEFENDANT:  Yes.

20         THE COURT:  I'm going to ask Ms. Cherry to

21    outline the terms of the cooperation agreement then.

22         MS. CHERRY:  Thank you, Your Honor.

23         At the risk of being a little repetitive, this

24    is a four-page letter agreement addressed to Attorney

25    Jensen, Mr. Newman's attorney, and entered into between

1    the United States Office for the district of Connecticut

2    as well as the Consumer Protection branch for the

3    Department of Justice with Mr. Norman Newman concerning

4    his cooperation.

5            The first page outlines or begins to outline the

6    scope of the cooperation, which includes the fact that

7    Mr. Newman agrees that he will disclose fully and

8    truthfully all information that he knows with respect to

9    criminal activities that both he or others have committed,

10   and that he will be open to debriefings by law enforcement

11   and he would turn over documents at our request.

12           Page 2 continues the scope of the agreement.  It

13   says that Mr. Newman has to testify truthfully, if asked,

14   before a grand jury or in another trial or proceeding in

15   the district of Connecticut or somewhere else.

16           Number 3 is he fully cooperates with the agents.

17   That may include sort of proactive investigative

18   techniques.  But importantly, Mr. Newman should not though

19   become his own investigator or do anything without being

20   authorized by the government.

21           And then the fourth says he shouldn't reveal his

22   cooperation.  This agreement will not be under seal, but

23   importantly, he shouldn't reveal any information derived

24   to any other party about his cooperation.

25           Then there is a section on informing the Court

and others about the cooperation.  It just says that the
government won't make any promises or representations to
what sentence the Court will give the defendant and it
won't make any recommendations as to that sentence.
However, the government will inform the Court about the
extent of Mr. Newman's cooperation, including any
prosecutive (sic) value or just really anything, the
truthfulness, the accuracy.

The next paragraph in that section refers to the
Section 5K1.1 motion that Your Honor was referring to, and
just that it is up to the government to determine if the
defendant has provided substantial assistance and if they
believe that he has, the government will file a 5K.  But
as Your Honor has already stated, the Court is under no
obligation to grant or act favorably upon that motion.

The bottom is a section that begins use of
information against the defendant.  It just let's
Mr. Newman know that we won't -- that we will disclose all
this information to the Court because we're required to,
but we will not -- we will ask that such information not
be used against the defendant, unless of course he
breaches the agreement and then everything is off the
table and we certainly can use his statements against him
and he may be prosecuted for perjury or false statements
or obstruction of justice.

1             And then the last paragraph on this page,

2    page 3, is a breach of the agreement.  It discusses ways

3    that the defendant may breach the agreement, such as

4    intentionally giving false or misleading information,

5    committing another crime, failing to cooperate, or just

6    violating any other terms of this agreement and the

7    government can null and void this agreement, but also the

8    plea agreement, which we're going to talk about in a

9    little bit.  If the government only voids the cooperation

10   agreement, the defendant should understand that he cannot

11   withdraw his guilty plea.  And if the agreement is

12   violated there may be other offenses and things that will

13   negatively happen upon the defendant should the government

14   so decide to pursue those.

15             And then on page 4, again, Your Honor has

16   outlined the fact that there are no other promises, that

17   everything that we've agreed to is contained in this

18   agreement and also this plea agreement, which we will get

19   to.  And then there's the signatory pages.

20             I can sign it now, if Your Honor --

21             THE COURT:  Please do.

22             MS. CHERRY:  I've signed it.  I have a signature

23   page that also includes the signatures from Attorney

24   Reynolds, a trial attorney from the Department of Justice,

25   and I'll walk it over.

1           THE COURT:  Sure.  I'll just confirm with

2  Mr. Newman that entering into this agreement is something

3  that you would like to do, sir?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Then you and your attorney can also

6  execute the cooperation agreement.

7           I'll have counsel hold on to it until we get to

8  the plea agreement and then I'll take them both at the

9  same time.

10          At this time then, Mr. Newman, there are some

11 things that I need to make sure that you understand in

12 terms of what kinds of rights a person gives up if he

13 decides to enter a guilty plea.

14          The first and most important thing that you must

15 understand is that you do not have to plead guilty even if

16 you are guilty.  Under our system of law, the prosecutor

17 has the burden of proving the guilt of a defendant beyond

18 a reasonable doubt, and if the prosecutor is unable to

19 meet this burden, the jury has the duty to find the

20 defendant not guilty, even if he is guilty.

21          Do you understand that, sir?

22          THE DEFENDANT:  I do.

23          THE COURT:  Now, it has sometimes happened that

24 a jury returns a verdict of not guilty even though

25 everyone else in the courtroom thinks the defendant is

guilty.  What the jury is saying in those cases is not necessarily that the defendant is innocent, but rather, that the prosecutor has failed to meet his or her burden of proving that the defendant is guilty.

Do you understand the difference, sir?

THE DEFENDANT:  Yes, I do.

THE COURT:  I want to make it very clear to you that even if you are guilty you have a choice:  You may plead guilty, as you apparently now wish to do, or you may say to the government, "prove your case; meet your burden of proving my guilt beyond a reasonable doubt," and the way you exercise that option is by saying "not guilty" when the Court asks you how you plead.

Do you understand that, sir?

THE DEFENDANT:  Yes, I do.

THE COURT:  Now, if you plead not guilty, under the Constitution and laws of the United States you are entitled to a speedy, public trial by a jury with the assistance of counsel on the charges contained in the indictment.

Do you understand that, sir?

THE DEFENDANT:  Yes.

THE COURT:  At the trial you would be presumed innocent and the government would have to overcome that presumption and prove you guilty beyond a reasonable doubt

1    by evidence that the Court determines is admissible.  You

2    would not have to prove that you were innocent.  If the

3    government were to fail, the jury would have the duty to

4    find you not guilty.

5              Do you understand that, sir?

6              THE DEFENDANT:  Yes, I do.

7              THE COURT:  In the course of a trial the

8    witnesses for the government would have to come to court

9    and testify in your presence and your counsel would have

10   the right to cross-examine the witnesses for the

11   government, to object to evidence offered by the

12   government, and to offer evidence in your defense.

13             Do you understand that, sir?

14             THE DEFENDANT:  Yes.

15             THE COURT:  At a trial, while you would have the

16   right to testify if you chose to do so, you could not be

17   required to testify.  This is because under the

18   Constitution a defendant in a criminal case cannot be

19   forced to take the witness stand at his trial and say

20   anything that could be used to show that he is guilty of

21   the crimes charged.  If you decided not to testify, the

22   Court would instruct the members of the jury that they

23   could not hold that against you.

24             And whether you testify or not, you have the

25   right to compel witnesses to come to court to testify in

1    your defense.

2              Do you understand all of that, sir?

3              THE DEFENDANT:  I do.

4              THE COURT:  Now, on the other hand, if you

5    decide to plead guilty, I will have to ask you questions

6    about what you did so I can be certain that you are guilty

7    of the charge to which you seek to plead guilty and you

8    will have to answer my questions and acknowledge your

9    guilt.  As a result, you would be giving up the rights

10   that I have just described, in particular, the right not

11   to say anything that would show that you are guilty of the

12   crimes with which you are charged.

13             Do you understand that, sir?

14             THE DEFENDANT:  Yes, I do.

15             THE COURT:  If you plead guilty and I accept

16   your plea, you will be giving up your constitutional right

17   to a trial and the other rights I have just discussed.

18   There will be no trial of any kind and no right to appeal

19   the conviction.  The Court will simply enter a finding of

20   guilty on the basis of your guilty plea.

21             Do you understand that, sir?

22             THE DEFENDANT:  I do.

23             THE COURT:  If your plea is accepted you will be

24   adjudged guilty of a felony offense and the result may be

25   to deprive you of certain rights, such as the right to

1    vote, the right to hold public office, and the right to

2    serve on a jury.  In addition, your conviction would

3    deprive you of the right to possess any kind of firearm or

4    ammunition.

5              Do you understand all of that, sir?

6              THE DEFENDANT:  Yes, I do.

7              THE COURT:  Mr. Newman, do you understand that

8    as a consequence of your conviction the Bureau of Prisons

9    or the United States Probation Office will collect a DNA

10   sample from you for analysis and indexing?

11             THE DEFENDANT:  Yes, I do.

12             THE COURT:  Now, your plea today may work to

13   your disadvantage, if, in the future, you are found guilty

14   of another crime because you could receive a longer

15   sentence at that time based on your conviction of the

16   crime you intend to plead guilty to today.

17             Do you understand how that could work, sir?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Let me ask you then, Mr. Newman:

20   Are you willing to give up your right to a trial and the

21   other rights I have just discussed?

22             THE DEFENDANT:  Yes, I am.

23             THE COURT:  And Ms. Cherry, there is a written

24   plea agreement.  Have the defendant and his counsel been

25   provided with the final version?

1          MS. CHERRY:  Yes, Your Honor.

2          THE COURT:  And is Mr. Newman ready to execute

3    the plea agreement?

4          MR. JENSEN:  He is, Judge.

5          THE COURT:  Please do so.

6          MS. CHERRY:  I will sign it.

7          Also as part of the agreement, Your Honor, at

8    the very end are just two pages that contain a

9    stipulation.

10         THE COURT:  The stipulation, yes.

11              (Pause.)

12         MS. CHERRY:  Your Honor, I apologize.  Just when

13   you asked me earlier about the penalties, I just can't

14   remember if I had mentioned that there was a $100 special

15   assessment, so I want to put on the record that there's a

16   $100 special assessment.

17         THE COURT:  Thank you.  Can't be too careful.

18         MR. JENSEN:  Shall I hand it up?

19         THE COURT:  Please do.  I'll take that and the

20   cooperation agreement.

21         Mr. Newman, have you read the plea agreement,

22   sir?

23         THE DEFENDANT:  Yes, I have.

24         THE COURT:  Have you discussed it with your

25   attorney?

1             THE DEFENDANT:  Yes, I have.

2             THE COURT:  Do you understand the agreement,

3      sir?

4             THE DEFENDANT:  Yes, I do.

5             THE COURT:  I'm just going to point out a couple

6      of provisions and then I'm going to ask Ms. Cherry to

7      outline the terms of the plea agreement.

8             There's a provision on page 6.  I'm going to ask

9      you about that.  Do you understand that a defendant

10     ordinarily can appeal or collaterally attack his sentence?

11            I'm sorry.  You have to speak out loud.

12            THE DEFENDANT:  Yes.

13            THE COURT:  Thank you.

14            Do you understand that if the sentence in your

15     case does not exceed 97 months of imprisonment, a

16     three-year term of supervised release, a $100 special

17     assessment and any fine or restitution the Court may

18     order, that you are giving up your right to appeal or

19     collaterally attack your sentence?

20            THE DEFENDANT:  Yes, I do.

21            THE COURT:  And at the very end of your plea

22     agreement there are two pages that contain what is called

23     the stipulation of offense conduct and relevant conduct.

24     You signed the second of those pages.

25            THE DEFENDANT:  Yes.

1          THE COURT:  Have you read that carefully, sir?

2          Have you discussed that with your attorney?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Thank you, sir.

5          At this time I'm going to ask the prosecutor to

6   outline the terms of the plea agreement.  Please listen

7   carefully as she does so because when she's finished I'll

8   have a couple of questions for you.

9          Ms. Cherry.

10          MS. CHERRY:  Thank you, Your Honor.

11          This is a plea agreement.  It's a nine-page

12   letter with page 10 and 11 being a stipulation of offense

13   conduct and relevant conduct.  It's a letter agreement

14   dated April 23, 2021.  It's addressed to Mr. Jensen,

15   Attorney Jensen, Mr. Newman's attorney, and it confirms

16   that there's a plea agreement between Mr. Newman and the

17   district of Connecticut -- the United States Attorney's

18   Office for the district of Connecticut as well as the

19   Department of Justice's Consumer Protection branch.

20          The bottom of the first page just outlines the

21   plea -- the offense, which is that the defendant agrees to

22   plead guilty to one count, Count One of the indictment,

23   charging a violation of 18 U.S.C. 1349, conspiracy to

24   commit mail and wire fraud.  And then it outlines the

25   essential elements.

1          Do you want me to go through them now, Your

2    Honor?  Is that appropriate?

3              THE COURT:  I will do it too.

4              MS. CHERRY:  I'll move on, I guess.

5              But they are the essential elements.

6          Then page 2 outlines the penalties as we've

7    already been through them.  Just notably, it carries a

8    maximum penalty of 20 years, there's supervised release, a

9    potential for a fine, the special assessment of $100, and

10   the potential for restitution.

11             Page 3 begins to talk about the Sentencing

12   Guidelines.

13             Page 4 explicitly goes through the fact that

14   there's a stipulation with respect to the Guidelines.

15   It's based on the Guidelines manual at the date of

16   sentencing.  Both the government and Mr. Newman agree that

17   the base offense level under U.S.S.G. Section 2B1.1 is 7.

18   That's increased by 20 because the parties agree that the

19   loss attributable to the defendant for the conduct charged

20   in Count One, was reasonably foreseeable to him and within

21   the scope of his conspiratorial agreement is between nine

22   and a half and 25 million.  Two levels are added because

23   the conspiracy involved ten or more victims.  Four levels

24   are added because the defendant knew the offense involved

25   a large number of vulnerable victims.

1           (Reporter interrupts.)

2           MS. CHERRY:  And then three levels are

3   subtracted under U.S.S.G. Section 3E1.1 for acceptance of

4   responsibility.  So the resulting offense level is 30.

5   Both parties agree that the defendant falls within

6   Criminal History I.  So a total offense level of 30 and

7   Criminal History Category I would result in a range for

8   imprisonment of 97 to 121 months, a fine range of $30,000

9   to $300,000, and then there's also a supervised release

10  term of one to three years.

11          The government reserves, as well as the

12  defendant, both reserve their right to seek a departure or

13  a non-Guidelines sentence, and both reserve the right to

14  object to a departure or non-Guidelines sentence.

15          Page 5 goes through the information to the

16  Court.  The government will discuss the facts of this case

17  with the Court as well as the defendant's background and

18  character.

19          Then it begins the waiver of rights section.

20  There's a waiver of trial rights and consequences of the

21  guilty plea.  There's a waiver of statute of limitations.

22          Continued on page 6 there's a waiver of a right

23  to challenge the conviction.  So by pleading guilty he

24  waives his right to appeal or collaterally attack his

25  conviction in any proceeding.

1          Then there's the waiver of right to appeal or

2     collaterally attack his sentence where agrees not to

3     appeal or collaterally attack the sentence in any

4     proceeding if the sentence does not exceed 97 months of

5     imprisonment, a three-year term of supervised release,

6     $100 special assessment, a fine, or restitution that is

7     ordered by the Court.

8          The bottom starts the acknowledgment of guilt

9     and voluntariness of the plea.  And it acknowledges

10    that -- the defendant acknowledges that he is entering

11    into the agreement and is pleading guilty free and

12    voluntarily because he's guilty.

13         On page 7 it outlines the scope of the

14    agreement.  It outlines the collateral consequences.  And

15    then it just says that the defendant's guilty plea, if

16    accepted by the Court, will satisfy the federal criminal

17    liability of the defendant in the district of Connecticut

18    and with the Department of Justice's Consumer Protection

19    branch.  It also mentions that at sentencing the

20    government will move to dismiss Counts Two through 16 of

21    the indictment.

22         On page 8 is a little bit of a paragraph that

23    says that the defendant understands that if he violates

24    any terms or conditions of this agreement, or fails to

25    appear for sentencing, the government may void all or

1    parts of this agreement but he cannot withdraw his guilty

2    plea.

3              And then page nine just outlines that no other

4    promises other than what's in this agreement, and

5    obviously the cooperation agreement, there are no other

6    promises and that everything that's set forth in writing

7    is all that's been promised by the government.

8              And then, as I mentioned before, pages ten and

9    11 are the stipulation of offense conduct which outline

10   the offense conduct that gave rise to the defendant's

11   agreement to plead guilty.  It continues on page 11 and

12   has the signature blocks.

13             Thank you.

14             THE COURT:  Thank you.

15             Mr. Newman, does the agreement as outlined by

16   the assistant United States Attorney fully and accurately

17   reflect your understanding of the agreement that you have

18   entered into with the government?

19             THE DEFENDANT:  Yes, it is.

20             THE COURT:  Other than the promises contained in

21   the two written agreements -- that is the cooperation

22   agreement and the plea agreement -- has anyone made any

23   promises that are causing you to plead guilty or any

24   promises that are causing you to waive your right to

25   appeal or collaterally attack your sentence?

1              THE DEFENDANT:  No, Your Honor.

2              THE COURT:  And sir, has anyone made any threats

3      against you or is anyone in any way forcing or otherwise

4      coercing you to plead guilty or to waive your right to

5      appeal or collaterally attack your sentence?

6              THE DEFENDANT:  No, Your Honor.

7              THE COURT:  Thank you.  In that case I'll direct

8      the courtroom deputy to file the plea agreement and the

9      cooperation agreement.

10             Mr. Newman, I want to make sure that you

11     understand the maximum sentence that could be imposed in

12     your case.

13             Do you understand that if you plead guilty you

14     could receive a sentence of imprisonment for as long as

15     20 years?

16             THE DEFENDANT:  Yes, I understand.

17             THE COURT:  Do you understand that you face a

18     supervised release term of as much as three years, and if

19     you violate your conditions of supervised release the

20     Court could sentence you to additional time in prison of

21     up to two years?

22             THE DEFENDANT:  I understand.

23             THE COURT:  Do you understand that you could be

24     assessed a fine in the amount equal to the greater of

25     $250,000 or twice the gross gain to you or twice the gross

1    loss caused by you as a result of your offense?

2              THE DEFENDANT:  Yes, I do.

3              THE COURT:  Do you understand that I must order

4    you to pay restitution to the victims of your offense?

5              THE DEFENDANT:  Yes.

6              THE COURT:  And sir, do you understand that I

7    must impose a mandatory special assessment of $100?

8              THE DEFENDANT:  Yes.

9              THE COURT:  I'm going to give you a little

10   background about how the sentencing process works at this

11   time.

12              In imposing a sentence in the federal courts,

13   judges are required to consider a list of factors that is

14   set forth in a part of the law that we refer to as

15   Section 3553(a) of Title 18 of the United States Code.

16   Those factors include the Sentencing Guidelines.  The

17   sentencing judge is required to consider the Sentencing

18   Guidelines in determining the particular sentence to be

19   imposed, but the Guidelines are advisory.  This means that

20   they suggest that a certain sentence may be appropriate,

21   but the Court is not required to impose that sentence.

22              So the judge must consider the sentencing range

23   calculated using the Guidelines in determining the

24   sentence to impose upon you, but the judge must consider

25   that Guidelines sentencing range along with all of the

1    other factors in Section 3553(a) and decide how much

2    weight to put on which factors.

3              Do you understand that, sir?

4              THE DEFENDANT:  I do.

5              THE COURT:  Also, in performing the Guidelines

6    calculation, the sentencing judge must:

7              First, determining the sentencing range that

8    would typically result from the combination of your

9    particular offense and your criminal history;

10             And second, determine whether there are facts

11   about your case that would lead the Court to conclude that

12   a higher range or a lower range is the appropriate

13   recommendation under these advisory Guidelines.

14             Do you understand that, sir?

15             THE DEFENDANT:  Yes, I do.

16             THE COURT:  I want to emphasize that until the

17   time of sentencing, when the Court has received a

18   Presentence Report about you and has heard from you and

19   from your attorney and from the government, you cannot

20   know with certainty what the recommended sentencing range

21   calculated using the Sentencing Guidelines will be, or

22   know how much weight the Court will put on which

23   particular factors under the statute, including the

24   Sentencing Guidelines.

25             Do you understand that, sir?

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  Mr. Newman, do you also understand

3    that if I do not accept any recommendation in your plea

4    agreement related to the Sentencing Guidelines you will

5    still be bound by your plea, that is, you will have no

6    right to withdraw your plea?

7          THE DEFENDANT:  I understand.

8          THE COURT:  Mr. Newman, have you reviewed with

9    your attorney how the Sentencing Guidelines relate to your

10   case?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Has your attorney explained to you

13   how your sentence may be determined in this case?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Do you understand that I am not

16   bound by any explanation or recommendation made by your

17   attorney or by the government?

18         THE DEFENDANT:  Yes, I understand.

19         THE COURT:  Okay.

20         Mr. Jensen, I will confirm with you that you

21   have discussed with your client how the Sentencing

22   Guidelines relate to his case and explained to him how his

23   sentence may be determined.

24         MR. JENSEN:  I have, Your Honor.

25         THE COURT:  And also that you have advised your

1   client that I am not bound by your explanation or estimate

2   or the terms of the plea agreement or any recommendation

3   from the government?

4          MR. JENSEN:  I have, Your Honor.

5          THE COURT:  Thank you.

6          Mr. Newman, I note that you are indicating that

7   you wish to plead guilty to one count of conspiracy to

8   commit mail and wire fraud.  You have the right to have

9   the charge in the indictment read to you.  You may,

10  however, choose not to have the charge read to you.  In

11  other words, you may waive a reading of the charge.

12         Mr. Jensen, have you discussed with your client

13  whether he wishes to waive a reading of the charge?

14         MR. JENSEN:  I have not, Your Honor.  May I have

15  one moment?

16         THE COURT:  Certainly.

17             (Off the record.)

18         MR. JENSEN:  I've discussed it, Your Honor.

19         THE COURT:  Okay.  And Mr. Newman, would you

20  like to waive a reading of the charge?

21         THE DEFENDANT:  Yes, I'll waive it.

22         THE COURT:  At this time then, sir, I'm going to

23  explain to you the elements of the offense to which you

24  intend to plead guilty.

25         By "elements of the offense" I mean those facts

1      that the government would have to prove beyond a

2      reasonable doubt were you to be convicted if you decided

3      not to plead guilty and you instead proceeded to trial.  I

4      want you to keep in mind that the government would have to

5      prove each of those facts by persuading a jury of 12

6      persons that those facts were true beyond a reasonable

7      doubt.

8                  Do you understand that, sir?

9                  Yes?

10                 THE DEFENDANT:  Yes.  Yes, Your Honor.

11                 THE COURT:  To prove that you are guilty of

12     conspiracy to commit mail and wire fraud, the government

13     would have to prove beyond a reasonable doubt:

14                 First, that between in or about February 2005

15     and in or about September 2016 a conspiracy existed to

16     commit mail and wire fraud as charged in Count One of the

17     indictment.

18                 And second, that you knowingly and intentionally

19     became a member of that conspiracy with the specific

20     intent to defraud.

21                 Do you have any questions as to these elements

22     of the offense, sir?

23                 THE DEFENDANT:  No questions.

24                 THE COURT:  At this time then, Mr. Newman, we're

25     going to turn to your conduct that brings us here today.

1          At this time I would like you to please tell me

2     in your own words what you did that shows that you are in

3     fact guilty of the charge to which you are now offering to

4     plead guilty.

5          MR. JENSEN:  Your Honor, Mr. Newman and I

6     prepared a written statement.  With your permission, he

7     would like to read it.

8          THE COURT:  He may.

9          Did you prepare a petition or just a written

10    statement he's going to use?

11         MR. JENSEN:  Just a written statement for

12    Mr. Newman to read.

13         THE COURT:  That's fine.

14         THE DEFENDANT:  From approximately 2005 to 2016,

15    I worked at a direct mail service company called

16    Macromark.  The company first had its offices in New York

17    and then moved to Connecticut in approximately 2011.

18         I worked solely as a list broker.  In that job I

19    brokered list rental transactions between direct mailers

20    and list owners.  My clients were the direct mailers who

21    wanted to send their mailings to more people.  The list

22    owners were companies that owned mailing lists that they

23    were willing to rent to others for a fee.  My job was to

24    recommend mailing lists to my clients based on my

25    knowledge and experience in the industry.

1          To the extent that my client and the list owner

2    agreed to a list rental, Macromark would receive a

3    commission and I would receive a percentage of that

4    commission.  The direct mailer would then use the mailing

5    list to send its mailings through the U.S. Mail to

6    consumers around the country, including the state of

7    Connecticut.

8          During the course of my employment at Macromark,

9    including while working in the district of Connecticut, I

10   came to understand that some of my clients' mailings were

11   deceptive.  One in particular was a Swiss entity named DDK

12   who sent solicitations that falsely represented themselves

13   as official prize notifications from sweepstakes and

14   falsely claimed that $55 needed to be sent to the Swiss

15   entity in order to claim the prize.

16         I understood that such mailings were false and

17   deceptive at the time and that it was wrong for DDK to

18   obtain people's money by false presentences, but agreed

19   with DDK to assist it in finding mailing lists and work

20   with other employees in Macromark as part of that

21   assistance.

22         I knew this was wrong at the time.

23         THE COURT:  Thank you, sir.

24         Mr. Newman, I'm now going to ask the prosecutor

25   to summarize what you did that makes you guilty of the

1    charge to which you intend to pled guilty and to also

2    summarize the government's evidence as to that charge.

3    Please listen carefully because when the prosecutor is

4    finished I will ask you whether you agree with

5    Ms. Cherry's summary of what you did and whether there's

6    anything she said with which you disagree.

7              Do you understand that, sir?

8              THE DEFENDANT:  Yes, I do.

9              THE COURT:  Ms. Cherry.

10             MS. CHERRY:  Thank you, Your Honor.

11             If the government had to take this case to trial

12   and prove that Mr. Newman entered into the conspiracy

13   beyond a reasonable doubt, we would show that he did

14   become a member of the conspiracy to commit mail and wire

15   fraud.

16             We would put forth evidence including federal

17   law enforcement testimony, layman's testimony, documents

18   which would include fraudulent related mass mailings that

19   were sent, bank records, emails, other electronic records,

20   possibly victim testimony, and other documents that we

21   received or got via a search warrant of the Macromark

22   facility some time back.

23             All of this evidence would show that, as I said,

24   Mr. Newman knowingly and intentionally became a member of

25   the conspiracy between 2005 through at least September of

1   2016.  He worked as a list broker for Macromark, which at

2   times during the conspiracy was located in the district of

3   Connecticut.

4           Mr. Newman's clients were mass mailers that sent

5   fraudulent mass mailings to victims through the mail.

6   These victims were mostly vulnerable victims.

7           Newman and his co-conspirator -- the evidence

8   would show that Newman and his co-conspirators assisted in

9   getting the mass mailers lists of as many potential and

10  previous victims as possible; that Mr. Newman knew that

11  these lists were being used to commit mail fraud, he knew

12  that the content of the mailings from some of his clients

13  were fraudulent, and he knew that these fraudulent mass

14  mailings were being sent to many vulnerable victims.

15          Mr. Newman also was aware that his clients were

16  engaged in this fraud because he had access and had seen

17  numerous press releases and other publicly-available

18  information with respect to the conduct of his clients.

19          Mr. Newman also -- we would also show -- excuse

20  me -- through emails and other electronic records the fact

21  that there were interstate wire communications as well as

22  mailings.

23          If that's acceptable with Your Honor, the

24  government is satisfied.

25          THE COURT:  Thank you.

1          Mr. Newman, do you agree with the prosecutor's

2     summary of what you did, sir?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  Is there anything she said with

5     which you disagree?

6          THE DEFENDANT:  No.  The only thing that I

7     disagree with, it gives the impression that all my clients

8     were fraudulent and that is not true.  Only some of the

9     mailing pieces were.  Many of my clients were perfectly

10    legal.

11         THE COURT:  Thank you, sir.

12         At this time then, Mr. Newman, we've reached the

13    point in the proceedings where you enter your plea.

14         Again, I will have the charge read to you unless

15    you waive a reading of the charge.

16         Do you waive a reading of the charge?

17         THE DEFENDANT:  Yes, I do.

18         THE COURT:  Madam Clerk, would you please put

19    the defendant to plea.

20         THE CLERK:  In the case of United States of

21    America versus Norman Newman, criminal number

22    3:20CR47(AWT), as to Count One of the indictment charging

23    you with violation of Title 18 United States Code

24    Section 1349, what is your plea?

25         THE DEFENDANT:  Guilty.

1        THE CLERK:  Your Honor, the defendant pleads

2   guilty to Count One of the indictment.

3        THE COURT:  Thank you.

4        On the basis of the stipulation of offense

5   conduct and relevant conduct included in the plea

6   agreement, the answers given by the defendant under oath,

7   on the record and in the presence of his counsel to the

8   questions of the Court, the remarks of defense counsel and

9   the remarks of the assistant United States Attorney, I

10  hereby find that the defendant is competent to plead, that

11  he knows his right to a trial and that he knows what the

12  maximum possible sentence is and that there will be a

13  recommended sentencing range determined pursuant to the

14  Sentencing Guidelines.

15       I find also that there is a factual basis for

16  the defendant's plea and that he is entering this plea

17  voluntarily, knowingly and of his own free will.

18       Accordingly, a finding of guilty shall enter

19  forthwith as to Count One of the indictment and this case

20  is referred to the United States Probation Office for a

21  presentence investigation.

22       Mr. Newman, a United States Probation Officer

23  will contact your counsel and arrange to interview you as

24  part of the process of preparing a Presentence Report

25  about you.  This report will be submitted to the Court to

1    assist it in determining the appropriate sentence in your

2    case.  You should be aware that the probation officers

3    work for the court.  They do not work for the prosecution.

4           Also, you should talk with your attorney before

5    you are interviewed about what types of information are

6    included in a Presentence Report so you can be prepared

7    for the interview because the Presentence Report is very

8    important in the process of determining your sentence.

9           Do you understand that, sir?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  And Mr. Jensen, I'll ask you to

12   contact the Probation Office some time soon to schedule

13   that interview.

14          MR. JENSEN:  I will, Your Honor.

15          May I have one quick moment to speak with the

16   government?

17          THE COURT:  Certainly.

18              (Off the record.)

19          THE COURT:  Thank you.

20          I note that Mr. Newman is currently on a

21   personal recognizance bond.  I assume there's an

22   application for release pending sentencing on the same

23   conditions?

24          MR. JENSEN:  There is, Your Honor.

25          THE COURT:  The application is granted.

1           Has Mr. Newman been processed by the marshals?

2           MR. JENSEN:  Yes, he has.

3           THE COURT:  Our standard schedule puts

4  sentencing on July 14.  Is that a timeframe that works in

5  terms of things you're doing?

6           MS. CHERRY:  Your Honor, as you're aware,

7  Mr. Newman signed a cooperation agreement.  If you want to

8  put that date down we wouldn't object, but then there most

9  likely will be a motion to postpone that date.

10          THE COURT:  Okay.  Should we hold off -- there

11 are two ways we can proceed:

12          I should definitely put a date down.  I'll just

13 put down July 14th with the understanding it's a

14 placeholder.

15          But the two options we have are we can start the

16 process of having the Presentence Report prepared with the

17 interview, et cetera, or we can decide to put off starting

18 the process until you know that it's closer in time to the

19 actual sentencing date.

20          Have you all discussed what you prefer?

21          MS. CHERRY:  We haven't really discussed it.  I

22 think --

23          THE COURT:  Why don't I let you all confer.

24          MR. JENSEN:  My vote would be to put it off,

25 Your Honor, because I think it could be some time.  It

1    could be a year or two.

2              Perhaps we should discuss it.

3              THE COURT:  Just take a quick moment now and let

4    me know.

5              (Off the record.)

6              MS. CHERRY:  I think, Your Honor, what would be

7    appropriate in this instance is we can set the sentencing

8    date for July 14th, not put down dates for the PSR, and

9    then we'll come back to the Court closer to the July 14th

10   date with an update as to when we think would be an

11   appropriate sentencing schedule, if that works for the

12   Court.

13             THE COURT:  Yes, that works fine.

14             MS. CHERRY:  Thank you.

15             THE COURT:  Right now we'll schedule sentencing

16   for July 14, 2021 with the understanding that I will get a

17   report from counsel as to a schedule for the Presentence

18   Report and a sentencing date at some point in the future.

19             MS. CHERRY:  Yes, Your Honor.  Thank you.

20             THE COURT:  Mr. Newman, I need to confirm that

21   you understand that failure to appear for sentencing may

22   subject you to additional penalties for the offense of

23   failure to appear or for violation of a court order.

24             THE DEFENDANT:  I understand.

25             THE COURT:  Mr. Jensen, have you advised your

1    client as to what the possible sanctions are should he

2    fail to appear in court when ordered to do so?

3              MR. JENSEN:  I have not, Your Honor, but I could

4    do that.

5              THE COURT:  I can do it.

6              Mr. Newman, if you fail to appear for sentencing

7    you face an additional up to ten years' imprisonment to be

8    served consecutively to the sentence I will order for the

9    offense to which you just pled, or an additional fine, or

10   both.

11             Do you understand that, sir?

12             THE DEFENDANT:  I do.

13             THE COURT:  All right.  Is there anything else

14   before we recess?

15             MS. CHERRY:  Nothing further from the

16   government, Your Honor.

17             MR. JENSEN:  Not from the defense, Your Honor.

18             THE COURT:  Thank you both.

19             We will recess.

20                  (Whereupon, a recess followed.)

21

22

23

24

25

```
1                    C E R T I F I C A T E

2


3              UNITED STATES V. NORMAN NEWMAN

4                      3:20CR47(AWT)

5


6


7         I, Corinna F. Thompson, RPR, Official Court

8    Reporter for the United States District Court for the

9    District of Connecticut, do hereby certify that the

10   foregoing pages, pages 1 - 43, are a true and accurate

11   transcription of my shorthand notes taken in the

12   aforementioned matter on April 23, 2021, to the best of my

13   skill and ability.

14


15


16


17                    /s/_____

18
                          CORINNA F. THOMPSON, RPR
19                         Official Court Reporter
                          450 Main Street, Room #225
20                        Hartford, Connecticut 06103
                              (860) 712-8345
21


22


23


24


25
```